UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICARDO ARREDONDO,

    Plaintiff,

v.    Case No. 13-11433

    HON. AVERN COHN

GENERAL MOTORS LLC,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 29) AND DENYING PLAINTIFF'S MOTION FOR COMPLETE PERSONNEL FILE (Doc. 35) AND DISMISSING CASE

### I. INTRODUCTION

    This is an employment discrimination case. Plaintiff Ricardo Arredondo (Arredondo), appearing *pro se*, is suing Defendant General Motors (GM), alleging discrimination based on his race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

    Now before the Court is GM's Motion for Summary Judgment (Doc. 29).[1] For the reasons that follow, GM's motion will be granted.

---

[1] Arredondo has also submitted a "Motion for Complete Personnel File from General Motors Corporation" (Doc. 35), and states in his response to GM's motion for summary judgment that he has not received his complete personnel file from GM. GM argues in response that (1) Arredondo's discovery request in the form of a motion is improper, and (2) that the request is untimely, violating the Court's previous Pretrial and Scheduling Order of March 25, 2014, which required discovery to be completed by July 24, 2014 and provided a motion cut-off deadline of August 25, 2014. In addition, GM

1

## II. BACKGROUND[2]

### A.

Arredondo is Hispanic; he was born in Mexico. He is currently employed by GM. He began working at GM's Detroit Hamtramck assembly plant in 1998. He is a member of the UAW and has primarily worked on the assembly line, in machine operation, and in unloading and delivering materials using a forklift.

To monitor and correct unacceptable workplace behavior, GM utilizes a six-step progressive disciplinary procedure, consisting of: (1) written reprimand; (2) balance of shift ("BOS") plus 1 day disciplinary layoff; (3) BOS plus 1 week disciplinary layoff; (4) BOS plus 2 weeks disciplinary layoff; (5) BOS plus 30 days disciplinary layoff; and (6) discharge.

From January 1999 through March 2012, Arredondo was disciplined on numerous occasions for various conduct violations. The disciplinary actions were issued by different supervisors, and were either progressive in nature or repeated from prior steps. In addition, Arredondo was disciplined on several occasions for attendance violations. Arredondo's employment record shows that his discipline progressed through Step 3, for stopping work prior to a designated work period (September 22, 2010); Step 4, for sleeping on the job, threatening a supervisor, and for refusing to

---

states that it has already provided Arredondo with his complete personnel file. GM states that any deficiencies that Arredondo has noted in his file (such as a lack of records regarding his supervisors' race, the workplace setup, or the types of cars Arredondo worked on) is a matter of human resources recordkeeping, rather than a failure to provide Arredondo with his complete personnel file. These arguments are persuasive. Arredondo's Motion for Complete Personnel File (Doc. 35) is therefore DENIED.

[2] Because Arredondo did not submit a counter-statement of material facts, the facts set forth here are based primarily on GM's Statement of Material Facts (Doc. 30), as supplemented by consideration of facts disputed in Arredondo's response brief (Doc. 36).

comply with the supervisor's instructions (May 12, 2011); and Step 5, for not following work procedure by improperly installing seats into the wrong vehicles resulting in downtime and multiple repairs (October 20, 2011).

Beginning in late 2011, Arredondo was assigned to work as a forklift operator. His duties included delivering material to/from the receiving docks using a forklift. On March 1, 2012, Arredondo's supervisor, Leonard Piecuch, noticed Arredondo had been missing from the dock area for a significant amount of time. When Arredondo returned, Piecuch advised him that he was taking too long with the delivery, to which Arredondo replied, "This is bullshit," and told Piecuch to step away from the forklift because he was too close. Piecuch instructed Arredondo to park and dismount the forklift; however, Arredondo left the forklift by the employee break area where another employee had to move it. Arredondo was instructed to report to Labor Relations for a disciplinary interview the following Monday, March 5, 2012. The interview was conducted by Bob Tarrant, Labor Relations Supervisor. Piecuch and Arredondo's union representative also participated in the interview. In addition to the events of March 1, it was also noted in the interview that Arredondo had, just one day before, been given a similar warning by Piecuch when Arredondo did not timely return after a scheduled break. Management did not believe that Arredondo provided a sufficient explanation for his behavior and his repeated absences. Because Arredondo had progressed to the Step 6—the final disciplinary step—he was discharged.

Arredondo later initiated a grievance challenging his discharge. Because of a negotiated resolution between GM and the UAW, Arredondo's employment was reinstated on September 3, 2013. He continues to work at the Hamtramck facility.

Thus, because Arredondo is once again employed by GM, the current claim of discrimination and wrongful termination based on race and national origin applies to the period from March 5, 2012 to September 3, 2013.

**B.**

Arredondo now claims that GM discriminated against him based on his race and national origin. In support, he states that GM fabricated incidents for which it could discipline him, ultimately resulting in his discharge. He further say that management—specifically Piecuch and Tarrant—wanted to discharge him so that they could hire their own relatives at an hourly rate lower than that of Arredondo. Arredondo also claims he overheard a conversation between Piecuch and a team leader over a two-way radio, in which Piecuch stated at some point, "we stick with this lazy Mexican," to which the team leader responded, "we need to get rid of him." Finally, Arredondo says that on one occasion, a team leader offered overtime to certain forklift operators but not to him.

### III. STANDARD OF REVIEW

The summary judgment standard of review under Fed. R. Civ. P. 56 is well known and not repeated here. Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike Cnty. Bd. of Ed.*, 286 F.3d 366, 370 (6th Cir. 2002).

When reviewing *pro se* papers, the Court must employ standards less stringent than if they had been drafted by counsel. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Puckett v. Cox*, 456 F.2d 233 (6th Cir. 1972).

### IV. ANALYSIS

**A.**

In its motion for summary judgment, GM argues that Arredondo fails to present a viable wrongful termination claim.

**1.**

In order to establish a prima facie case of discrimination, Arredondo must demonstrate: (1) his membership in a protected class; (2) that he was qualified for the job in question; (3) an adverse employment action; and (4) that he was replaced by someone outside the protected class, or was treated less favorably than a similarly situated individual outside of the protected class. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002); *Johnson v. University of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000).

**2.**

Once Arredondo establishes a prima facie case, GM has the opportunity to offer a legitimate, nondiscriminatory reason for his discharge. *Johnson*, 215 F.3d at 573. Once GM proffers a legitimate reason for its decision, the burden shifts back to Arredondo to prove by a preponderance of the evidence that the reason was a pretext for discrimination. *Id.* To demonstrate that a nondiscriminatory reason for his discharge is pretextual, Arredondo must prove "'(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his [discharge], or (3) that they were *insufficient* to motivate discharge.'" *Chattman v. Toho Tenax America, Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (emphasis in original) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

**B.**

First, GM argues that Arredondo fails to establish a prima facie case of race or national origin discrimination. Specifically, it claims that Arredondo fails to satisfy the fourth prong—that he was treated less favorably than or replaced by a similarly situated non-protected employee.

**1.**

The Sixth Circuit has explained that when a plaintiff lacks direct evidence of discrimination, to establish that another employee is "similarly situated," "the plaintiff must show that the 'comparables' are similarly-situated in all respects . . . " *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992)). The plaintiff must "prove that all of the *relevant* aspects of his employment situation were 'nearly identical' to those of [the non-minority's] employment situation." *Id*. (emphasis and brackets in original) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994)). In the disciplinary context, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id*. (quoting *Mitchell*, 964 F.2d at 583).

**2.**

In response, Arredondo says that he was treated less favorably than other employees, who were subject to discipline but were not ultimately discharged. Arredondo says that several other employees were discharged from the Hamtramck facility in 2005 after they were arrested for possession of illegal substances, but were

6

reinstated shortly thereafter. However, Arredondo fails to present any evidence—or make any statement whatsoever—relating to these unnamed employees' race or national origin. Nor does he claim or present evidence suggesting that these employees had similar disciplinary records. Such unsupported evidence is insufficient to establish that there were similarly situated, non-protected employees that were treated more favorably than Arredondo.

**3.**

In addition, to demonstrate that he was treated less favorably than other employees, Arredondo says that GM improperly terminated him—specifically, that he was discharged without ever having reached disciplinary Step 6. However, as noted, Step 6 of GM's progressive disciplinary procedure results in discharge. The record clearly shows that Arredondo had reached Step 5 as the result of an incident on October 20, 2011 (See Doc. 31-1 at 52). After the incident on March 1, 2012, the next step was therefore discharge under Step 6 (See Doc. 31-1 at 53). Arredondo's argument that he was terminated without having reached Step 6 is without merit.

**V. CONCLUSION**

For the above reasons, Arredondo has failed to demonstrate that similarly situated employees outside the protected class were treated more favorably than him. Therefore, Arredondo cannot establish a prima facie case for Title VII race and national origin discrimination. GM's motion is therefore GRANTED. This case is DISMISSED.

SO ORDERED.

                                           S/Avern Cohn
                                      UNITED STATES DISTRICT JUDGE

Dated: January 20, 2015

13-11433 Ricardo Arredondo v. General Motors, LLC

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, January 20, 2015, by electronic and/or ordinary mail.

S/Sakne Chami
Case Manager, (313) 234-5160